IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

NEW YORK LIFE INSURANCE
COMPANY,

                Plaintiffs,

v.                                      Action No. 08:09–CV–3031—AW

ROBERT ALEXANDER CLEMETSON,
*et al.*,

                Defendants.

---

## **MEMORANDUM OPINION**

Pending before the Court is Defendant/Claimants, Nina Queen Irving, Ebony King, and Hattie L. White's ("IKW Defendants") Motion for Summary Judgment against Defendant/Claimant, Robert Alexander Clemetson. (Doc. No. 31).[1] Also pending before the Court is IKW's motion to Compel. (Doc. No. 27). From the Court's review of the record, it appears that this Motion is now moot, as the requested documents have now been submitted to IKW, although untimely. Therefore, the Court will proceed to **DENY** IKW's Motion to Compel as **MOOT**. The Court will address the Motion for Summary Judgment herein.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

New York Life Insurance Company filed this interpleader action on November 11, 2009, regarding the life insurance policy of decedent, Claudia Clemetson ("the Insured").

---

[1] The Court notes that pursuant to the Scheduling Order issued in this case, the deadline for all dispositive motions was July 30, 2010. The IKW Defendants filed this Motion for Summary Judgment on August, 25, 2010, and thus, the Motion was filed out of time. Further late filings may result in the waiver of claims and/or other sanctions. However, as no opposing party indicates that any prejudice has resulted from the late filing, the Court will not reject the Motion for Summary Judgment.

1

The Insured signed a Term Life Insurance Policy application for her husband, Defendant/Claimant, Robert A. Clemetson on September 13, 2007.[2] (Doc. No. 1, at 2). Giving rise to the dispute in this case, on July 22, 2008, the insured allegedly submitted a Change of Beneficiary form, naming her daughter, Ebony King, as the First Beneficiary; her mother, Hattie White as the Second Beneficiary; and her friend, Nina Queen Irving as the Third Beneficiary.[3] New York Life alleges that they sent letters to the Insured on July 24 and 25, 2008, informed the insured that they had recorded her change in beneficiary form. *Id.* at 3. Just a few days later, on July 31, 2008, the insured signed and submitted a Settlement Agreement which reflected the beneficiary change. *Id.* The insured died on April 30, 2009, and on May 1, 2009, New York Life Insurance Company was informed on the Insured's death. *Id.* at 4. They subsequently received competing claims to the Insured's policy proceeds from Defendants Clemetson, King, White, and Irving. Defendant Clemetson submitted a letter to New York Life challenging the mental capacity of the insured at the time she signed her Change of Beneficiary Form which extinguished Clemetson's rights to any proceeds under the policy.

New York Life sought to have the Court determine the rights and claims to the policy proceeds before New York Life made any distribution to the policy's proceeds.[4]

## II. STANDARD OF REVIEW

Summary judgment is only appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must draw all justifiable inferences in

---

[2] This policy has a face value of $250,000 (Policy No. 48 852 851). (Doc. No. 1, at 3).
[3] In her Change of Beneficiary Form, the Insured specified that the parties should receive the following distributions of her policy: King (70%), White (25%), and Irving (5%).
[4] New York Life was dismissed from this case on January 15, 2010, and the Defendants were directed to settle this dispute amongst themselves. (Doc. No. 21).

favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must provide evidence that shows a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp. Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

### III. ANALYSIS

The primary dispute in this case is whether the Claudia Clemetson, the Insured, had the requisite mental capacity to change her New York Life Insurance Policy beneficiaries at the time she executed her change of beneficiary request on July 22, 2008. There is no dispute of material fact that the Insured did in fact execute this form, evidenced by the Settlement Agreement executed for the Insured's Policy on July 31, 2008. (Doc. 1-6). However, Defendant Robert Clemetson attempts to create a genuine dispute of material fact by presenting unsubstantiated claims, and referencing medical reports appearing nowhere in the record or the briefings on the Summary Judgment motion." In a facsimile correspondence to New York Life Insurance Company, Defendant Clemetson alleged the following related to his wife's capacity to execute a change in beneficiary form:

3

> [A]pproximately one year ago, my wife slipped into a diabetic coma as a result of her battle with cancer. My wife was incoherent and unable to make sound decisions pretty much from July to September. During that period, Nina Queen Irving and others fed her false information which ultimately led to the change of beneficiaries on the policy, removing my name and adding Mrs. Irving's name.
> . . . .
> Again, I am writing to reaffirm that I am contesting this policy because fraudulent and deceitful actions have and continue to occur.

(Doc. No. 1, Ex. 10).

In *Lynn v. Magness*, the Court held that "a change of beneficiary, to be given effect, must appear to have been made understandingly, and if it is shown that there was either lack of mental capacity or fraud or undue influence, the attempted change will be held inoperative. It is also accepted that the degree of mental capacity necessary to change the beneficiary in a life insurance policy is the same as that necessary to execute a will or a valid deed or contract. " 191 Md. 674, 680-681 (1948) (internal citations omitted). Discussing the presumption of sanity, the Court held, "the law presumes every man to be sane and to possess the requisite mental capacity to make a valid will or contract. Testimony, in order to be legally sufficient to overthrow the presumption in favor of a person's sanity and capacity, must be directed to the date of the execution of his will or contract, and must tend to show that he was incompetent at that particular time." *Id.* (internal citations omitted).

The evidence presented in the record clearly demonstrates that there is no genuine dispute of material fact that the Insured had the mental capacity to execute a Change of Beneficiary form on July 22, 2008. Defendants Irving and King offer affidavit testimony, stating that they were at Ann Arundel Medical Center on July 22, 2008 when the Insured executed the Change of Beneficiary request resulting in the distribution of her Policy Proceeds currently reflected in the Settlement Agreement. Both defendants testify that the Insured was "awake, alert, and coherent," and she was "sitting up in the bed as she discussed [the change] with the insurance

4

agent." (Doc. Nos. 31-7; 31-6). New York Life Insurance Company subsequently sent two letters to the Insured confirming the changes to her policy. (Doc. Nos. 31-2; 31-3).[5]

Defendant offers absolutely no evidence to create a genuine issue of material fact regarding the Insured's mental capacity on July 22, 2008. In fact, his own admissions demonstrate that his allegations about the Insured's lack of capacity are not supported by any factual basis. In response to Request for Admissions, Defendant Clemetson admits that he was banned from seeing the Insured while she was in the hospital between July and September of 2008. (Doc. No. 31-4). Moreover, he admits that "because [he] was not physically present at the time of [sic] that the change of beneficiary form was executed, [he] does not have personal knowledge of the people present, [sic] however he has knowledge from reviewing the documents." (Doc. No. 34, at 2, ¶5). With these admissions, and with no other factual basis for his claims of the Insured's lack of capacity, no genuine dispute of fact exists to overcome the presumption that the Insured was sane and possessed the mental capacity necessary to execute a Change of Beneficiary Form on July 22, 2008.[6]

In his response to the IKW Defendant's Motion for Summary Judgment, Defendant Clemetson avers that he "notified [the IKW] Defendants of his expert witnesses and gave the Defendants copies of all of the reports of said experts in the course of discovery." (Doc. No. 32, at 1). In his sur-reply to the Motion for Summary Judgment, Defendant avers

> Claudia Clemetson's medical records include her history, diagnosis, treatments, prescriptions, reflect time periods, and include treating physician's names and notes. All which can show that Claudia Clemetson had a "mental status change" and which also state what Claudia Clemetson's complaints of symptoms were or is she was even able to

---

[5] The first letter, sent on July 24, 2008 incorrectly stated the distribution that each beneficiary would receive under the changed policy. A subsequent letter was issued to the Insured on July 25, 2008, accurately reflecting the changes that the Insured had made to her policy. The two notifications that were sent to the Insured, and the Insured's failure to contest the changes demonstrates her understanding of the changes made and her voluntariness in executing the changes to her policy.

[6] Defendant Clemetson has not included any medical documents referencing the Insured's mental capacity in the briefings on this Motion.

> articulate anything.
>
> . . . .
>
> Subsequent to the death of the Decedent, the Defendant Robert Clemetson contacted Plaintiff New York Life Insurance Company alleging amoung other things that the Decedent had been in a "diabetic coma" [sic] was in a "confused state" [sic] and was "incoherent [sic] and unable to make sound decisions pretty much from July-September 2008.

(Doc. No. 34, at 2, ¶ 4, *et seq*.).[7]

Defendant alleges that these medical records were hand-delivered to counsel for the IKW Defendant. *Id.* However, these documents which purportedly demonstrate the mental capacity of the Insured have not been referenced or cited in Defendant Clemetson's briefings, nor are they present in the record. The Court cannot rely on the alleged existence of these medical documents to create a factual dispute if the Court is unable to view them. The alleged medical records reference a "mental status change," but Defendant Clemetson does not demonstrate with any factual support that this alleged "mental status change," was considered so grave as to constitute a lack of capacity to contract.

Without any factual basis to demonstrate that the Insured lacked the requisite mental capacity to change her insurance policy, the Court finds that the defendant has failed to overcome the presumption of sanity. Therefore, the Court will **GRANT** the IKW's Motion for Summary Judgment, and all policy proceeds shall be distributed in the manner set forth in the Settlement Agreement executed on July 31, 2008 between the Insured and New York Life Insurance Company.

The Court will next address Defendant IKW's Motion to Compel. Defendant IKW filed

---

[7] The Court notes that Defendant Clemetson has not complied with Local Rule 105.2, which does not permit surreply memoranda to be filed without permission of the Court. Defendant Clemetson has not sought leave of the Court to file a surrpely to this Motion, in violation of the Local Rules. However, because it appears that no prejudice has resulted to the parties from this violation, the Court will consider Defendant Clemetson's surreply. However, for future briefs, leave must be granted in order for a surreply to be considered.

a Motion to Compel Discovery from Defendant Clemetson on June 18, 2010 and subsequently requested attorney's fees for the prosecution of the Motion to Compel. (Doc. Nos. 27 and 29). Defendant Clemetson responded to this Motion with the requested discovery responses on July 13, 2010. (Doc. No. 28). Although these disclosures were arguably untimely filed, the Court finds that no prejudice has resulted to the parties. Therefore, this Motion will be **DENIED-AS-MOOT**, and the Court will **DENY** IKW's request for attorney's fees.

## CONCLUSION

In conclusion, IKW's Motion for Summary Judgment is **GRANTED**, and the Motion to Compel is **DENIED-AS-MOOT**. Defendant IKW's Request for Attorney's Fees is **DENIED**. An order consistent with this Memorandum will follow.

Date:  January 6, 2011                                         /s/
                                                       Alexander Williams, Jr.
                                                       United States District Court